IN THE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FRANK CAPPITELLI,

    Plaintiff,

v.                                                    Case No.:

ALEJANDRO N. MAYORKAS,
in his official capacity as
SECRETARY OF THE DEPARTMENT
OF HOMELAND SECURITY,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff FRANK CAPPITTELLI, by and through his undersigned counsel, and files this Complaint and Demand for Jury Trial against ALEJANDRO N. MAYORKAS, in his official capacity as SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY and in support thereof states as follows:

### NATURE OF ACTION

1. This is an action against Defendant to recover damages stemming from Defendant's violations of 29 U.S.C. § 794 et seq. (the "Rehabilitation Act").

2. This is an action against Defendant to recover damages stemming from Defendant's violations of 42 U.S.C. § 2000e et seq. (the "Civil Rights Act").

### PARTIES, VENUE, AND JURISDICTION

3. Plaintiff is a resident of Orlando, Florida.

1

4. Defendant is an officer of the Department of Homeland Security, an agency of the executive branch of the United States, being sued in his official capacity.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(C).

## SATISFACTION OF ADMINISTRATIVE PREREQUISITES

7. Plaintiff timely filed a formal EEO complaint against Defendant, alleging discrimination and retaliation in violation of the Rehabilitation Act and the Civil Rights Act.

8. The Department of Homeland Security issued a final decision regarding Plaintiff's EEO complaint on July 28, 2020.

9. On August 28, 2020, Plaintiff filed an appeal of the Agency's final decision with the U.S. Equal Employment Opportunity Commission ("EEOC").

10. On October 12, 2021, the EEOC issued a final decision affirming the Agency's final decision.

11. On March 17, 2022, the EEOC's Office of Federal Operations ("OFO") denied Plaintiff's request for reconsider its October 12, 2021 decision.

12. Plaintiff had 90 days to file suit from the date of the OFO's decision.

13. Plaintiff timely filed the instant Complaint.

14. Plaintiff has satisfied all administrative prerequisites to filing the instant action.

## STATEMENT OF THE FACTS

15. Plaintiff is homosexual.

16. Plaintiff is a transgender woman, meaning that he is a woman who was assigned the gender of male at birth.

17. Plaintiff is Hispanic.

18. Plaintiff's national origin is Mexican and Puerto Rican.

19. Plaintiff suffers from Attention Deficit Disorder ("ADD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and complications stemming from a Traumatic Brain Injury ("TBI") he suffered during his service in the armed forces.

20. Plaintiff's disabilities cause memory loss and difficulties with concentration.

21. In January 2019, Plaintiff disclosed his ADD and ADHD diagnoses to Defendant as part of the application process for the Immigration Services Officer position.

22. On June 10, 2018, Plaintiff was appointed as an Immigration Services Officer for the Department of Homeland Security's Immigration and Customs Enforcement Vermont Service Center in Essex, Vermont.

23. Plaintiff's position was subject to a one-year probationary period.

24. During his probationary period, Plaintiff was required to complete a training period during which he would learn the rules and laws required to perform his job.

25. Upon completion of the training period, Plaintiff would become certified.

26. On or about August 2, 2018, Plaintiff's first level supervisor changed to David Gilbert.

27. At all times material to this Complaint, Plaintiff's second level supervisor was Section Chief Alexandra Collins.

28. On or about August 5, 2018, Plaintiff disclosed that he was "gay," a "transgender woman," and of Mexican and Puerto Rican descent.

29. Mr. Gilbert learned of Plaintiff's sexual orientation in August 2018.

30. During his August 5, 2018 meeting with Ms. Collins, Plaintiff also disclosed his disabilities.

31. Plaintiff began discussing his disabilities and his need for accommodation with Mr. Gilbert in August 2018.

32. On October 26, 2018, Plaintiff submitted a letter from his psychiatrist in support of his need for a reasonable accommodation. In that letter, Plaintiff's psychiatrist suggests that Plaintiff required extended time for test taking as well as private proctoring.

33. Defendant agreed to provide Plaintiff with extended time for test taking as well as private proctoring on October 29, 2018.

34. Despite Defendant's approval of Plaintiff's reasonable accommodation request, Mr. Gilbert initiated a campaign of harassment against Plaintiff based on his disability, sex, race, and national origin.

35. Between August 2018 and April 2019, Mr. Gilbert routinely:

    a. referred to Appellant as "Pablo." Pablo was a code name used by Mr. Gilbert in the immigration reporting center to report individuals he suspected to be illegal immigrants;

    b. threatened to use his "old immigration reporting" number to have Plaintiff "deported," if he made a mistake;

    c. told Plaintiff that he was "too white and not brown enough to be Hispanic," that he "doesn't look Hispanic enough to be Hispanic," and that he is a "Wannabe Mexican;"

    d. commented that he detected a "bad smell" when in Plaintiff's presence, stating that the odor must be originating from Plaintiff due to "all the beans [his] people like to eat;"

    e. referred to Plaintiff as "a federally certified fag;"

    f. called Plaintiff "retard;"

    g. told Plaintiff that "only retarded people need accommodation;" and

    h. followed Plaintiff outside during his cigarette breaks to further torment him about his gender identity and sexual orientation.

36. On one occasion, after Plaintiff underwent surgery on his genitals to remove a potentially cancerous growth. Upon returning to work, Mr. Gilbert continued his campaign of harassment by telling Plaintiff that it "was not that big

5

of a deal for trannies and gays since all of you want them off anyways." Mr. Gilbert went on to ask Plaintiff if he now needed to sit when he urinated.

37. On another occasion, Mr. Gilbert told Plaintiff, "Yeah my brother has ADD and he's a bit of a retard too."

38. Mr. Gilbert also told Plaintiff, "If you think you should be doing your work this way, this shows how much of a retard you are and need to double up on your meds."

39. In addition to his harassing comments, Mr. Gilbert also treated Plaintiff differently than he did other trainees because of his disability, sex, race, and national origin. Between August 2018 and April 2019, Mr. Gilbert routinely:

    a. subjected Plaintiff to heightened performance scrutiny;

    b. prevented Plaintiff from participating in workplace social functions;

    c. criticized Plaintiff's work product;

    d. instructed Plaintiff to perform his work in ways that were inconsistent with the standard operating procedures;

    e. made unreasonable demands of Plaintiff that he did not make of other trainees; and

    f. gave Plaintiff hours of additional work to perform at the end of the day, demanding that Plaintiff complete the work before Plaintiff left for the day.

40. After completing his BASIC training program on November 20, 2018, Plaintiff was assigned to a desk near the copy machine, which was highly trafficked, creating distractions.

41. To permit him to appropriately focus on his work, Plaintiff requested that he be reassigned to a desk located in a less-trafficked location with fewer distractions.

42. Alternatively, Plaintiff requested a noise cancelling machine and/or noise cancelling headphones, and to increase the height of his cubicle walls to minimize distractions.

43. Defendant denied Plaintiff's requested accommodations.

44. Defendant provided no explanation for the denial of Plaintiff's accommodation requests.

45. Defendant did not engage in any form of an interactive process to determine if other reasonable accommodations might be afforded to Plaintiff.

46. In December 2018, Plaintiff purchased noise cancelling headphones with his own money.

47. Mr. Gilbert did not permit Plaintiff to wear his noise cancelling headphones stating, "Pablo, you can't wear those in the office until certified."

48. On February 7, 2019, Plaintiff reported his supervisor's discriminatory acts to his Section Chief.

49. Defendant certified Plaintiff on February 12, 2019.

50. Plaintiff's supervisor recommended his termination on February 28, 2019.

51. Defendant terminated Plaintiff on April 5, 2019.

52. During the termination meeting, Defendant told Plaintiff, "Your medical issues give us cause for concern if you can perform your job."

## COUNT I: FAILURE TO ACCOMMODATE

53. Plaintiff reasserts the allegations contained in paragraph 1, 3-6, 7-14, 19-27, and 30-52 as if fully restated herein.

54. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act.

55. Plaintiff was otherwise qualified for the position in which he was employed.

56. Defendant was aware of Plaintiff's disability.

57. Defendant discriminated against Plaintiff when it failed to engage in an interactive process to determine what reasonable accommodations could be afforded to him.

58. Defendant discriminated against Plaintiff when it refused to provide Plaintiff with reasonable accommodations.

59. As a direct and proximate result of Defendant's discriminatory acts in violation of the Rehabilitation Act and the Civil Rights Act, Plaintiff has suffered lost wages and benefits, emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief including: compensation for all compensatory damages allowed by law; an award of reasonable attorney's fees and costs; interest; and such other additional equitable and legal relief as may be just and proper.

### COUNT II: HARASSMENT

60. Plaintiff reasserts the allegations contained in paragraph 1-2, 3-6, 7-14, and 15-52 as if fully restated herein.

61. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act.

62. Plaintiff was otherwise qualified for the position in which he was employed.

63. Plaintiff was subjected to Defendant's unwelcome conduct because of his disability, sex, race, and national origin.

64. Plaintiff reasonably regarded Defendant's conduct as undesirable and offensive.

65. The conduct was severe, abusive, repeated, and pervaded Plaintiff's working environment.

66. The conduct affected the terms, conditions, and privileges of Plaintiff's employment by humiliating him, causing him emotional distress, and interfering with his work performance.

67. As a direct and proximate result of Defendant's discriminatory acts in violation of the Rehabilitation Act and the Civil Rights Act, Plaintiff has suffered

9

lost wages and benefits, emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief including: compensation for all compensatory damages allowed by law; an award of reasonable attorney's fees and costs; interest; and such other additional equitable and legal relief as may be just and proper.

## COUNT III: DISCRIMINATION

68. Plaintiff reasserts the allegations contained in paragraph 1-2, 3-6, 7-14, and 15-52 as if fully restated herein.

69. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act.

70. Plaintiff was otherwise qualified for the position in which he was employed.

71. Defendant discriminated against Plaintiff because of his disability, sex, race, and national origin when it terminated Plaintiff's employment because of his disability, sex, race, and national origin.

72. As a direct and proximate result of Defendant's discriminatory acts, Plaintiff has suffered lost wages and benefits, emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief including: compensation for all compensatory damages allowed by law; an

award of reasonable attorney's fees and costs; interest; and such other additional equitable and legal relief as may be just and proper.

## COUNT IV: RETALIATION

73. Plaintiff reasserts the allegations contained in paragraph 1-2, 3-6, 7-14, and 15-52 as if fully restated herein.

74. Plaintiff engaged in protected activity under the Rehabilitation Act and Civil Rights Act when he reported Defendant's discriminatory acts to his Section Chief on February 7, 2019.

75. Plaintiff engaged in protected activity under the Rehabilitation Act and the Civil Rights Act when he participated in an investigation of his claims of discrimination.

76. Defendant terminated Plaintiff's employment in retaliation for his protected activity under the Rehabilitation Act and the Civil Rights Act.

77. Defendant's actions described above constitute adverse action for the purpose of a claim of relation in that they would be deemed actions which would dissuade a reasonable worker from making or supporting a charge of discrimination.

78. As a direct and proximate result of Defendant's violation of the anti-retaliation provisions of the Rehabilitation Act and the Civil Rights Act, Plaintiff has suffered lost wages and benefits, emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests a jury trial on all issues and relief including: compensation for all compensatory damages allowed by law; an award of reasonable attorney's fees and costs; interest; and such other additional equitable and legal relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted this 14th day of June 2022

**DELEGAL & POINDEXTER, P.A.**

/s/ James C. Poindexter
T.A. DELEGAL, III, B.C.S.
Fla. Bar No.: 892701
Email: tad@delegal.net
Secondary email: office@delegal.net
JAMES C. POINDEXTER
Fla. Bar No.: 0116039
Email: james@delegal.net
ALEXANDRA E. UNDERKOFLER
Fla. Bar No.: 1018209
Email: alex@delegal.net
424 E. Monroe Street
Jacksonville, Florida 32202
Telephone: (904) 633-5000
Facsimile: (904) 358-2850
*Attorney for Plaintiff Cappitelli*